UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
BBF PARTNERS LLC and TAILORED
FUND CAP LLC,

                Plaintiffs,                       **MEMORANDUM AND ORDER**

          v.                               20-CV-5544 (RPK) (MMH)

MON ETHOS PRO CONSULTING LLC
D/B/A MON ETHOS PRO CONSULTING
and DAVID A. WHITAKER,

                Defendants.
------------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

Plaintiffs BBF Partners LLC and Tailored Fund Cap LLC filed this action alleging breach of contract and malicious abuse of process against defendants Mon Ethos Pro Consulting LLC and David A. Whitaker.  Plaintiffs allege that defendants breached two contracts and then engaged in frivolous litigation designed to coerce plaintiffs into accepting defendants' settlement demands.  Defendants have moved for judgment on the pleadings.  For the reasons stated below, defendants' motion is granted in part and denied in part.

## BACKGROUND

The following facts are drawn from the complaint and are assumed true for the purposes of this order.

On June 10, 2020, BBF (using the name "Rapid Cap") contracted with Mon Ethos to purchase $127,315 of Mon Ethos' future receivables.  Compl. ¶ 10 (Dkt. # 1).  The contract specified that Mon Ethos would pay BBF/Rapid Cap twenty percent of its daily receivables until that amount was reached.  *Id.* ¶¶ 10-14.  Whitaker agreed to guarantee Mon Ethos' performance under the contract personally.  *Id.* ¶ 10.  Initially, Mon Ethos performed under the contract.  *Id.* ¶

13.  But on or around June 25, 2020, Mon Ethos stopped making payments despite a balance of $94,449 remaining due.  *Id.* ¶ 14.

On June 15, 2020, Tailored Fund Cap (using the name "Day to Day Funding") contracted with Mon Ethos to purchase $67,455 of Mon Ethos' future receivables.  *Id.* ¶ 17.  This contract also called for Mon Ethos to pay Tailored/Day to Day twenty percent of its daily receivables until the purchase amount was reached.  *Id.* ¶ 19.   As with the first contract, Whitaker personally guaranteed Mon Ethos' performance.  *Id.* ¶ 17.  Mon Ethos originally performed but stopped making payments on or around June 25.  *Id.* ¶¶ 20-21.  At that time, Mon Ethos had $53,863 remaining due.  *Ibid*.

Whitaker did not make payments under either contract.  *Id.* ¶¶ 16, 23.

The same day that Mon Ethos stopped making payments under the contract, defendants sued plaintiff BBF and several related entities in this Court.  *Id.* ¶ 25; *see Whitaker et al. v. BBF Partners, LLC et al.*, No. 20-CV-2831 (RPK).  Defendants alleged that BBF and the related entities had made unlawfully usurious loans to defendants and had misrepresented the nature of the loan agreements.  Compl. ¶ 25; *see Whitaker*, No. 20-CV-2831 (Dkt. #1).  Eventually, defendants voluntarily dismissed their action.  Compl. ¶¶ 38-39.  Plaintiffs assert that defendants engaged in the prior litigation to avoid liability under the agreements and to coerce plaintiffs into accepting defendants' settlement demands.  *Id.* ¶¶ 41, 41 n.2, 60.

In November 2020, plaintiffs filed this lawsuit.  They allege that Mon Ethos breached the two contracts, Whitaker breached the two personal guarantees, and both defendants engaged in malicious abuse of process.  *Id.* ¶¶ 49-62.  Plaintiffs seek damages.  *Id.* 9.  Defendants have moved for judgment on the pleadings.  *See* Dkt. ## 17, 23.

**STANDARD OF REVIEW**

Motions for judgment on the pleadings under Rule 12(c) and motions to dismiss under Rule 12(b)(6) are evaluated under the same standard. *See Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004). In evaluating either motion, a court must "accept[ ] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co., Ltd. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010)). To avoid dismissal, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint, in other words, must plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. While the plausibility standard "is not akin to a 'probability requirement,'" it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

"[O]n a motion for judgment on the pleadings, courts may consider all documents that qualify as part of the non-movant's 'pleading,' including (1) the complaint or answer, (2) documents attached to the pleading, (3) documents incorporated by reference in or integral to the pleading, and (4) matters of which the court may take judicial notice." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 306 (2d Cir. 2021) (citation omitted). "But a court may not resolve the motion by weighing the plausibility of competing allegations or by considering evidence extrinsic to the non-movant's pleading without converting the motion to one for summary judgment." *Ibid.*

If a movant under Rule 12(c) presents evidence outside the non-movant's pleadings, Federal Rule of Civil Procedure 12(d) "presents district courts with only two options: (1) 'the court

may exclude the additional material and decide the motion on the complaint alone' or (2) 'it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.'" *Palin v. New York Times Co.*, 940 F.3d 804, 810-11 (2d Cir. 2019) (quoting *Kopec v. Coughlin*, 922 F.2d 152, 154 (2d Cir. 1991) (citations and internal quotation marks omitted)).

## DISCUSSION

Plaintiffs' claims for breach of contract and breach of guarantee may proceed, but plaintiffs' claim for malicious abuse of process is dismissed.

### I.       Plaintiffs' Breach-of-Contract Claims Against Mon Ethos May Proceed.

Plaintiffs have adequately pleaded breach of contract against Mon Ethos.  "The elements of a breach of contract claim in New York are: (1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." *Kramer v. N.Y.C. Bd. of Educ.*, 715 F. Supp. 2d 335, 356 (E.D.N.Y. 2010) (quoting *RCN Telecom Servs., Inc. v. 202 Centre St. Realty LLC*, 156 F. App'x 349, 350-51 (2d Cir. 2005) (citation omitted)).  A plaintiff "may not assert a cause of action to recover damages for breach of contract against a party with whom it is not in privity" of contract. *Yucyco, Ltd. v. Republic of Slovenia*, 984 F. Supp. 209, 215 (S.D.N.Y. 1997) (citing *Perma Pave Contracting Corp. v. Paerdegat Boat & Racquet Club, Inc.*, 549 N.Y.S.2d 57, 58 (N.Y. App. 1992)) (internal quotation marks omitted).

Defendants argue that plaintiffs' breach-of-contract pleadings are deficient in two respects, but both arguments fall short.  First, defendants contend that plaintiffs have not adequately alleged privity under *Iqbal*. Defs.' Mem. of L. in Support of J. on the Pleadings 6-9 (Dkt. # 23-1) ("Defs.' Mem.").

4

But a corporation that makes a contract under a fictitious name is still in privity with its contracting counterparty, because "it is well settled that a fictitious business name does not establish a separate legal entity." *Cusano v. Horipro Ent. Grp.*, 301 F. Supp. 2d 272, 277 (S.D.N.Y. 2004), *aff'd*, 126 F. App'x 521 (2d Cir. 2005) (citing *Pinkerton's, Inc. v. Superior Court*, 57 Cal. Rptr. 2d 356, 360 (Cal. App. 1996) (collecting cases from a variety of jurisdictions)); *Trs. of the Mason Tenders, Dist. Council Welfare Fund, Pension Fund, Annuity Fund & Training Program Fund v. Faulkner*, 484 F. Supp. 2d 254, 257 (S.D.N.Y. 2007) ("Doing business under another name does not create an entity [distinct] from the [entity] operating the business.") (quoting *In re Golden Distributors, Ltd.* 134 B.R. 766, 768-769 (Bankr. S.D.N.Y. 1991) (citation omitted)) (internal quotation marks omitted).  Consequently, "a corporation may be known by several names in the transaction of its business, and it may enforce and be bound by contracts entered into in an adopted name other than the regular name under which it was incorporated." *Harmon v. Ivy Walk Inc.*, 853 N.Y.S.2d 289, 292 (N.Y. App. 2008) (quoting *Mail & Express Co. v. Parker Axles*, 204 App. Div. 327, 329 (N.Y. App. 1923)) (internal quotation marks omitted).

Applying that principle, plaintiffs have adequately pleaded that they made contracts with defendants.  Defendants are correct that contracts attached to the complaint list Rapid Cap and Day to Day Funding as the lenders, and that the contracts do not mention BBF and Tailored Fund. Defs.' Mem. 6-8.  But in the complaint, plaintiffs allege that BBF and Tailored Fund were operating under the "fictitious name[s]" of Rapid Cap and Day to Day Funding, respectively. Compl. ¶¶ 10, 17.  Moreover, those allegations are supported by public records of which the court may take judicial notice in adjudicating a motion to dismiss.  *See Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (noting that courts can "look to public records . . . in deciding a motion to dismiss") (citations omitted); *e.g.*,

*Scalabrini v. PMAB, LLC*, No. 18-CV-11152 (NSR), 2020 WL 1049167, at *4 (S.D.N.Y. Mar. 3, 2020) (taking judicial notice of a fictitious name filing as a matter of public record) (citations omitted).  As plaintiffs observe, public records readily available on the New York's Secretary of State's website establish that Rapid Cap and Day to Day were registered as plaintiffs' assumed names.  *See* DBA Rapid Cap, Pls. Ex. A (Dkt. # 23-13); DBA Day to Day, Pls. Ex, B (Dkt. # 23-14).  Plaintiffs' fictitious-name allegations, coupled with these documents, are adequate to survive a motion to dismiss on the theory that plaintiffs have not adequately pleaded privity.[*]

Second, defendants argue that plaintiffs have failed to allege a breach of contract, because Mon Ethos had no obligation to pay defendants under the contract if Mon Ethos ceased operations—as defendants allege has occurred.  Defs.' Mem. 9.  But plaintiffs allege that "Mon Ethos is still conducting regular business operations and still collecting receivables."  Compl. ¶ 45.  On a motion for judgment on the pleadings, those allegations are assumed true.  *Lotes Co., Ltd.*, 753 F.3d at 403.  Accordingly, plaintiffs have adequately alleged breach of contract.  Defendants' motion for judgment on the pleadings is therefore denied as to plaintiffs' breach-of-contract claims.

## II.    Plaintiffs' Breach-of-Guarantee Claims Against Whitaker May Proceed.

Plaintiffs have also adequately alleged breach of guarantee against Whitaker.  The elements of a prima facie case for breach of guarantee under New York law are "(1) an absolute and unconditional guaranty, (2) the underlying debt, and (3) the guarantor's failure to satisfy the unpaid debt."  *Merchant Cash & Capital, LLC v. Haute Soc'y Fashion, Inc.*, 16-CV-2696 (ILG), 2017 WL 2912452, at *2 (E.D.N.Y. July 6, 2017) (citation omitted).  Plaintiffs have alleged here that

---

[*]  Because defendants' only developed argument is that plaintiffs have failed to adequately plead an assumed-name relationship under *Iqbal*, I address only that argument here.  While defendants also "request that the Court take[] judicial notice" of records of the Department of State indicating that Day to Day and Rapid Cap are organized as separate corporations, Defs.' Mem. 7, defendants have not developed any separate argument to dismiss based on that point.  For example, defendants have not developed any separate argument that, as a matter of law, those registrations vitiate the fictitious-name relationship that plaintiffs have pleaded.

Whitaker unconditionally guaranteed Mon Ethos's performance under its contracts with BBF and Tailored; that Mon Ethos failed to perform as the contracts required; and that Whitaker has failed to satisfy the debt.

Defendants fall short in contending that plaintiffs' claim is nevertheless subject to dismissal. Defs.' Mem. 9-12. Paralleling Mon Ethos's arguments above, defendants argue that plaintiffs are not entitled to sue Whitaker because any guarantee obligations he has are owed to BBF Partners and Tailored rather than to plaintiffs. *Id.* 9-10. But as explained above, plaintiffs have adequately pleaded that they were operating under the names BBF Partners and Tailored Fund Capital. Accordingly, defendants are not entitled to dismissal on this ground.

Defendants fare no better in arguing that plaintiffs have not adequately pleaded that Whitaker guaranteed Mon Ethos's debts. *Id.* 10-12. A court may dismiss a contract-based claim that is unambiguously foreclosed by the language of the contract. *See, e.g., Rounds v. Beacon Assoc. Mgmt. Corp.*, No. 09-CV-6910 (LBS), 2009 WL 4857622, at *3 (S.D.N.Y. Dec. 14, 2009). But defendants err in arguing that the contracts here foreclose plaintiffs' breach-of-guarantee claims. Defendants' argument is that Whitaker's guarantees of the performance of the party identified as "Merchant" are best read to have guaranteed the performance of "David A. Whitaker, not Mon Ethos." Defs.' Mem. 11 (emphasis removed). Defendants rely on a signature line below the designation "For The Merchant (#1)," that states "By David A. Whitaker," followed by Whitaker's electronic signature.

Defendants' reading of the guarantee provisions is not a plausible one. Both contracts identify Mon Ethos as the "Merchant." Compl., Ex. BBF Contract 1 (Dkt. # 1-1) ("BBF Contract"); Compl., Ex. Tailored Contract 1 (Dkt. # 1-2) ("Tailored Contract"). And both contracts identify Whitaker as the guarantor. BBF Contract 6-7; Tailored Contract 1, 6, 7. Whitaker's name and

signature on the signature line for Merchant #1—after the text "By"—merely establishes that Whitaker was the person who signed on behalf of Mon Ethos.  Accordingly, the terms of the contracts do not foreclose plaintiffs' breach-of-guarantee claims.

### III.     Plaintiffs' Claim for Malicious Abuse of Process is Dismissed.

Plaintiffs have failed to state a claim for malicious abuse of process.  Under New York law, "a malicious-abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (citation and internal quotation marks omitted). "[A] malicious motive alone" is not sufficient to meet the collateral purpose requirement. *Id.* at 77 (quoting *Curiano v. Suozzi*, 63 N.Y. 2d 113, 117 (N.Y. 1984) (internal quotation marks omitted)).  "Instead," a plaintiff must "claim that [defendants] aimed to achieve a collateral purpose beyond or in addition to" the purposes of the litigation that the defendants initiated.  *Ibid*.  Thus, for example, a plaintiff does not state a claim for malicious abuse of process by alleging that city officials who investigated and arrested him had malicious motives for doing so, absent evidence that the officials were seeking to pursue "a ulterior purpose or objective" outside of the prosecution.  *Id.* at 77-78.

Plaintiffs have pleaded improper motive, but not a collateral purpose.  They assert that defendants filed their lawsuit "with malicious intent," Compl. ¶ 57, and that "the entire purpose of bringing the action as against the [p]laintiffs was to escape liability on [defendants' contracts with plaintiffs] and to attempt to utilize the legitimate process of litigation in an illegitimate manner to force the [p]laintiffs to capitulate" to monetary settlement demands, *id.* ¶ 41 & n.2.  But defendants' attempt to avoid liability under their contracts with plaintiffs cannot qualify as a collateral

8

objective of defendants' lawsuit.  Escaping the contracts was one of the lawsuit's explicit aims—not a "collateral purpose beyond or in addition to" the lawsuit's purposes.  *Savino*, 331 F.3d at 77; *see Demirovic v. Ortega,* No. 15-CV-327 (CLP), 2016 WL 11472745, at *14 (E.D.N.Y. Sept. 15, 2016) (dismissing a malicious-abuse-of-process claim because the "defendants fail to argue that the lawsuit itself has a collateral objective 'outside the legitimate ends of the process,' which is to recover unpaid wages.") *aff'd*, 771 F. App'x 111 (2d Cir. 2019) (citation omitted).  Similarly, seeking to settle damages claims is part of the regular course of civil litigation.  Accordingly, a litigant who attempts to negotiate a monetary settlement of its damages claim is not pursuing "a collateral objective that is outside the legitimate ends of the process" in a civil suit.  *Peter L. Hoffman, Lotte, LLC v. Town of Southampton*, 523 F. App'x 770, 771 (2d Cir. 2013); *see Bayer AG v. Sony Elecs., Inc.*, 229 F. Supp. 2d 332, 368-69 (D. Del. 2002) ("Rather than an abuse of process, the pursuit of settlement is a valid, legitimate and worthy part of the process.") (Delaware law), *aff'd*, 83 F. App'x 334 (Fed. Cir. 2003).  Accordingly, defendants' motion for judgment on the pleadings as to plaintiffs' abuse-of-process claim is granted.

## CONCLUSION

Defendants' motion for judgment on the pleadings on plaintiffs' breach-of-contract and breach-of-guarantee claims is denied.  Defendants' motion for judgment on the pleadings on plaintiffs' abuse of process claims is granted.

SO ORDERED.

/s/ Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated: March 2, 2022
        Brooklyn, New York